Jamie M. Woolsey, WSB # 6-3985
Ian K. Sandefer, WSB # 6-4334
Sandefer & Woolsey, Trial Lawyers LLC
143 North Park Street
Casper, WY 82601
PHONE (307) 232-1977; FAX (307) 333-6508
Email: jamie@swtriallawyers.com, ian@swtriallawyers.com

Terry J. Harris, WSB # 5-2068
HARRIS, HARRIS & QUINN, P.C.
P.O. Box 368
2618 Warren Avenue
Cheyenne, Wyoming 82003-0368
Telephone (307) 638-6431
Email: tjharrispc@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19-CR-171-ABJ |
| ) | |
| GREGORY J. BENNETT and MATTHEW ) | |
| "TY" BARRUS, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS GREGORY J. BENNETT'S AND MATTHEW "TY" BARRUS' MOTION TO STRIKE THE GOVERNMENT'S UNTIMELY DESIGNATED EXPERT WITNESSES

COME NOW the Defendants, Gregory J. Bennett and Matthew "Ty" Barrus, by and through their undersigned counsel, and hereby move the Court for an order striking the *Government's Expert Witness Designation* (ECF No. 153) and excluding from trial proposed

1

expert testimony from the witnesses identified therein. As a basis for this motion, the Defendants state that *Government's Expert Designation* was filed three weeks past the court-ordered deadline[1].

### I.   Background

On September 26, 2019, the Government received an *Indictment* charging Mr. Bennett and Mr. Barrus with one count of "Conspiracy to Commit Healthcare Fraud," one count of "Healthcare Fraud," and individual counts of "Engaging in a Monetary Transaction Involving Criminally-Derived Property." (ECF No. 1). On October 2 and 3, 2019, the Court issued *Discovery and Scheduling Order*(s) as to Mr. Bennett and Mr. Barrus. (ECF Nos. 40 and 49). The *Discovery and Scheduling Order*(s) required the Government to file its expert designations six (6) weeks prior to trial and Defendants were ordered to file their expert designations three (3) weeks prior to trial.

In this case, the United States believed that the Court's standard scheduling order was unacceptable and moved for an order that provided more time for expert designations. Specifically, at the hearing on Defendant's *Motion to Continue Trial* held on April 24, 2020, Mr. Heimann requested:

> **The Government would like to move the expert designation deadlines in this matter.** They're currently set by the governing scheduling orders in this case based on the trial date. The Government's designation is 42 days, six weeks before trial. And we would ask to move that out to 63 days or nine weeks before trial. The defendants' expert designation deadline is currently 21 days before trial. We would ask to move that out to 42 days or six weeks. And, lastly, the 14-day deadline for Daubert challenges for experts, we would ask to move that deadline out to 28 days.

---

[1] Defendants reserve any and all *Daubert* challenges to the Government's expert witnesses in the event the Court denies this motion, which is based upon the delinquency issue. Defendants intend to file their *Daubert* challenges by the Court-ordered deadline.

*See Transcript of Motions Proceedings*, April 24, 2020, pp. 31-32 (bold emphasis added).

Mr. Heimann further represented to the Court that, as of April 24, 2020: "we have determined which experts we intend to designate…." *Id*.

The Court granted the United States' request, as reflected in its *Order Granting Motion to Continue Trial* on April 28, 2020, which required the Government to file expert designations nine (9) weeks prior to trial and Defendants to file six (6) weeks prior to trial.

The nine-week Government-requested deadline for the Government's designation came and went on December 21, 2021. Three weeks later, and six weeks before trial, Defendants timely filed their expert designations as ordered by this Court. The United States—after Defendants timely filed their expert designations—filed its expert witness designation. The Government listed four potential expert witnesses in this matter, which by its own representations to this Court and counsel April 24, 2020, Mr. Heimann has known he would list for over twenty months. The Government noted in its designation that, "when processing the two subsequent continuances, the government mistakenly calendared its designation for the original six-week deadline.[2] (ECF No. 153, p. 2).

---

[2] The *Discovery and Scheduling Order*(s) issued on October 2 and 3, 2019 also required the United States to provide discovery to Defendants within 21 days, but discovery continues to trickle in to Defendants more than two years after the filing of this matter. The Government, as recent as January 11, 2022, has continued to provide discovery materials, which include materials, in most instances, from before 2019. For example, the recent discovery productions have included, among other things:

    November 5, 2021: Medicaid Fraud Unit Report from March 16, 2011, which includes a report of a March 13, 2012 interview of Defendant Barrus, not previously produced to Defendants.

    November 29, 2021: Approximately 23 interviews of witnesses and providers that billed Medicaid through Gibson Condie from 2016. These materials are exculpatory and central to the defense.

    January 7, 2022: Photographs of NWTC from 2015; emails related to audits of NWTC from 2009, as well as a second interview recording (an additional recording of an officer present for the interviews) of Defendants Barrus and Bennett.

    January 11, 2022: Photographs of NWTC from 2015 and Medicaid provider bulletins from 2005 and 2012.

**II.     Relevant Case Law and Argument**

The Tenth Circuit has outlined the three principle factors that a district court should consider in determining the appropriate sanction for violating a scheduling order, including: 1) the reason for the delay, including whether the non-compliant party acted in bad faith; 2) the extent of the prejudice to the other party; and, 3) the feasibility of curing the prejudice with a continuance. *See United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988). However, the Court specifically noted that these three factors are "merely guidance" for the district court in consideration of sanctions, and are not intended to "dictate the bounds of the court's discretion." *Id*. The *Wicker* court further explains:

> [A] comprehensive set of standards to guide the exercise of discretion in every possible case is neither necessary nor appropriate." *Id*. (citing *Taylor v. Illinois*, 484 U.S. 400, 108 S. Ct. 646, 655 (1988). On occasion, the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court **even though the defendant may not be prejudiced**." *See United State v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979) (there is no abuse of discretion when "a district judge for prophylactic purposes suppresses evidence . . . the government should have disclosed earlier"); *see also United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986) (district court has "inherent power to control and supervise its own proceedings").

*Wicker,* 848 F.2d at 1061.

The case law establishes that negligence alone can justify excluding evidence. For example, in *Wicker*, the government did not produce a laboratory report before the court's deadline. *Id.* The

---

Defendants were not able to have their experts review and consider, when forming their opinions, any of the late-produced discovery in this matter. Similarly, Defendants also were not able to present their experts with exculpatory materials received in response to this Court's Subpoenas *Duces Tecum* directed to Wyoming Medicaid, Program Integrity, and Healthcare Financing – exculpatory materials, the receipt of which the Government delayed with its *Motion to Quash*. (ECF No. 135). Defendants know now, from the late production of materials received from subpoenas, that as early as December 8, 2010, Wyoming Medicaid was made fully aware that Northwest Wyoming Treatment Center was providing the very adolescent addiction treatment and services that are at the heart of this federal felony prosecution more than a decade later. Since as early as October 2, 2019, the United States has been obligated to "<u>promptly</u> disclose" exculpatory evidence. (ECF No. 40; emphasis in original).

government attempted to explain the delay in filing by claiming the expert who prepared the report was negligent in failing to send copies of the report to the government as requested. The court was not persuaded by this explanation and noted that the government was not relieved of its discovery obligation by requesting the report from the expert. The Court went on to find that, had the government made the least effort to follow up on its request, and not neglected its duty under Rule 16(a)(1)(D), the government would have been able to deliver a copy of the report to defendants timely. *Id*.

Similarly, the Tenth Circuit affirmed a district court's suppression of late-filed expert testimony relating to fluid testing on a towel related to a first-degree murder charge in *United States v. Elk*, 185 Fed. Appx. 716 (10th Cir. 2006). In doing so, the Tenth Circuit agreed with the trial court, when it observed that throughout the case, the government had been represented by veteran trial lawyers who had full access to evidence and the FBI's forensic services, but chose to conduct testing late in the case when a new attorney took the lead. *Id*. at 723. Further, the Tenth Circuit agreed with the trial court when it found that while the government had not technically violated Rule 16, it violated the spirit of the rule by not providing evidence supporting the government's case at the earliest opportunity.

In this case, each factor outlined by the court in *Wicker* weighs in favor of exclusion of the government's expert witnesses. First, the Government's own inaction is the reason for the delay in filing its expert designation. As early as April 2020, almost two years ago, the Government informed the Court and counsel that it had determined which expert witnesses it intended to designate for trial. If the Government had acted with any diligence, it would have calendared the deadline properly and filed timely. Mr. Heimann is an experienced trial attorney and the special deadlines for expert designations were issued at his request. Even a cursory review of the

Government's expert designation makes it clear that the proposed testimony is important to the presentation of the Government's case-in-chief. As such, diligence in the filing of this information should have been prioritized. Further, as can be seen from the Government's disclosure, the Government was not waiting on any expert reports to file—the Government was simply required to timely file a summary that complied with this Court's order.

Second, introduction of the expert testimony proposed by the United States would cause prejudice to the Defendants. Because the Government's late designation, the Defendants' own expert witnesses had no opportunity to review such designation prior to completing their reports. Because of this, Defendants made preparations with their witnesses for trial accordingly. In this instance, Defendants filed their expert designation *prior* to the United States. Further, the Government's late filing, including the listing of a forensic accountant, makes it impossible for Defendants to properly prepare for, evaluate, and/or refute evidence offered against them at this late hour. To this end, had the Government timely filed, Defendants almost certainly would have retained an expert witness or witnesses to refute the proposed testimony by the purported experts in the Government's late designation.

Third, it has not been lost on the Defendants that, when requesting an earlier expert witness designation deadline, one of the Government's stated reasons was so it could review the Defendants' designations, move to strike or exclude experts, and, if unsuccessful in that pursuit, designate rebuttal experts. *See Transcript of Motions Proceedings*, April 24, 2020, p. 32. Permitting the Government to offer testimony from its late-filed experts would place the Government in the exact position that it wanted to be in—*i.e.*, with the six (6) weeks to try to attack the Defendants' experts and/or designate rebuttal experts—but deny Defendants' experts the three

(3) weeks the Court ordered to review, opine upon, and rebut the Government's purported experts' opinions. From a fundamental fairness standpoint, this should not be permitted.

Though Defendants expect to more thoroughly address this in a later motion, it should be noted that the Government's designation of forensic accountant, Brad Bell, is wholly deficient. The Government, somewhat cryptically, asserts that "Mr. Bell will testify to facts regarding NWTC's checking account, including the flow of money from the State of Wyoming into NWTC's account and then specific payments and transfers to the Defendants." *See Government's Expert Witness Designation* at p. 10. That is the extent of the designation of Mr. Bell's testimony, other than the fact that he will, apparently, base his testimony on "trial evidence" and be consistent with the previous testimony of FBI Agent Arlen Scholl. The Government fails to inform Defendants or the Court what exactly Mr. Bell's opinion regarding the "cash flow" is, or, further, to provide *any* basis for such an opinion. There is absolutely no discussion of Mr. Bell's reasons for his opinions, or what he relied on, other than "evidence, including bank records." *Id*.

Further, the three other witnesses listed in the *Government's Expert Witness Designation* are employees of Wyoming Medicaid and the Wyoming Medicaid Fraud Control Unit. These are fact witnesses, that can be offered by the Government to discuss the offices at which they work and the Wyoming Medicaid Program if they are excluded as expert witnesses. These witnesses are not physicians, they are not psychologists, and they are not licensed health care professionals. As such, they are not qualified to testify regarding the medical necessity or therapeutic components of treatment provided by Defendants and Northwest Wyoming Treatment Center. Further, these witnesses are not lawyers. They are not qualified to testify regarding the applicable federal or state statutes, or regulations, as urged by the United States. *See, e.g., Specht v. Jensen*, 853 F.2d 805, 810 (1988) (en banc) ("...when the purpose of testimony is to direct the jury's understanding of

the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.").

Defendants recognize the significance of the sanction they are requesting, however, the Government's expert witnesses should be excluded as experts because no lesser sanction is reasonable in this matter. The exclusion of the Government's expert witnesses is the only way to remedy the prejudice to Defendants and to deter future discovery violations by the United States. In this case, the jury trial has been continued on three occasions—with the last continuance being at the request of Mr. Heimann, and based on Mr. Heimann's trial schedule. The Defendants do not want to further delay resolution of this case, and a delay should not be forced on them because of the Government's failure to timely comply with this Court's order. A continuance would also undermine the integrity of the judicial process, as the deadlines imposed by the Court are mandatory, not optional. No party is above complying with the deadlines, and the failure to meet them must have consequences. See, e.g., *United States v. Roy*, 2006 U.S. Dist. LEXIS 9583, 2006 WL 453205, at * 1-2 (D. Minn. Feb. 22, 2006) (excluding government's expert and recognizing that "[d]iscovery in criminal matters should not amount to a game of hide and seek") (This decision is attached hereto as Attachment 1 for the Court's and the parties' convenience).

### III.  Conclusion

WHEREFORE, the Defendants, Gregory Bennett and Matthew Ty Barrus, respectfully request that the Government's delinquent expert designation be stricken and the experts listed therein be prohibited from testifying at trial in an expert capacity, and grant such further relief as is appropriate.

**DATED** and SIGNED this 20th day of January, 2022.

/s/ Jamie M. Woolsey
Jamie M. Woolsey (WSB # 6-3985)
Sandefer & Woolsey, Trial Lawyers, LLC
143 N. Park Street
Casper, WY 82601
(307) 232-1977
jamie@swtriallawyers.com


s/Terry J. Harris
Terry J. Harris, WyBar # 5-2068
HARRIS, HARRIS & QUINN, P.C.
P.O. Box 368
2618 Warren Avenue
Cheyenne, Wyoming  82003-0368
*Telephone* (307) 638-6431
tjharrispc@gmail.com

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served this 20th day of January, 2022, as follows:

| | |
|---|---|
| United States Attorney's Office | [_] U.S. MAIL |
| Eric Heimann | [_] HAND DELIVERY |
| 2120 Capitol Ave, Suite 4000 | [_] EMAIL |
| Cheyenne, WY 82001 | [_] FACSIMILE |
| | [ X ] CM/ECF |

/s/ Jamie M. Woolsey
Jamie M. Woolsey